UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PAUL MULLHOLLAND,

                    Plaintiff,                         Case No. 1:23-cv-338

v.                                                     Honorable Sally J. Berens

NATE HOFFMAN et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rules 18, 20, and 21 regarding joinder, the Court will drop Defendants Unknown Burgess, J. Erway, Unknown Montague, Unknown Majerczyk, and Unknown Clouse, and dismiss Plaintiff's claims against them without prejudice.

With regard to the Defendants and claims that remain, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against remaining Defendants Unknown Hoffman, Unknown Miller, Unknown Horrocks, John Gibson, Thomas Perttu, and the Michigan Parole Board for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

## I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility and the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.

Plaintiff sues the MDOC Parole Board. He also sues the following personnel from AMF: Deputy Warden Unknown Hoffman; Residential Unit Managers Unknown Miller and Thomas Perttu; Assistant Deputy Warden Unknown Horrocks; and Prisoner Counselor John Gibson (collectively, the AMF Defendants). Plaintiff sues the following personnel from ECF: Warden Unknown Burgess; Assistant Deputy Wardens J. Erway and Unknown Clouse; Residential Unit Manager Unknown Montague; and Unit Chief Unknown Majerczyk (collectively the ECF Defendants).

### A.    The Parole Board and the AMF Defendants (Compl., ECF No. 1, PageID.3)

Plaintiff alleges that Defendant Gibson informed Plaintiff that Gibson, the other AMF Defendants, and the Parole Board were considering giving Plaintiff a parole. But Plaintiff did not want to be released on parole. He reports that he will "max out" on October 30, 2023, and he would like to return to Chicago. He does not believe that would be possible if he is paroled. Plaintiff's complaint suggests that a parole would result in conditions and supervision to which he would not be subject if he were simply discharged after serving his maximum sentence.

Plaintiff told Gibson that Plaintiff did not want to be paroled. The Parole Board and the AMF Defendants, apparently collectively, attempted to convince Plaintiff to take the parole. Plaintiff declined. Defendants paroled him anyway. Plaintiff claims that granting parole without notice and a hearing violated his due process rights.

4

On January 17, 2023, Plaintiff was transferred to ECF to participate in the "Start Now" program. (Compl., ECF No. 1, PageID.3.) Plaintiff claims that the transfer was a retaliatory act by "defendants," presumably the Parole Board and the AMF Defendants.

### B.    The ECF Defendants (Compl., ECF No. 1, PageID.3–4)

Plaintiff refused to participate in the Start program. He was written a ticket for disobeying a direct order. He was found guilty and was sanctioned with 10 days loss of privileges.

Plaintiff is apparently now participating in the Start program. He contends it is unconstitutional. Plaintiff reports that he is not being permitted to participate in group counseling, which is required if he is to move forward in—or perhaps out of—the program. Plaintiff has asked for a work assignment to alleviate the boredom of being cell-bound for 22 hours per day. He has apparently been offered work, but not for monetary compensation. Instead he would be paid by food trays and extra time out of his cell.

Plaintiff reports that he should not be compelled to participate in the Start program because he is not mentally ill. He also complains that the conditions in the program amount to cruel and unusual punishment.

Plaintiff asks the Court for an unspecified declaratory ruling and for $1,600,000.00 in compensatory and punitive damages.

## II.    Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners [to] immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court will look to the first clear factual allegations to determine which portions of the action should be considered related. Plaintiff's first claim, chronologically and as presented in the complaint, relates to the actions of the Michigan Parole Board and the AMF Defendants in expressing an intention to grant Plaintiff a parole and then, after Plaintiff indicated that he did not want a parole, allegedly transferring Plaintiff to ECF in retaliation.

To the extent that, as Plaintiff alleges, the AMF Defendants along with the Parole Board acted together in expressing an intention to grant parole and then deciding to transfer Plaintiff after he indicated his dissatisfaction with that plan, it appears that those claims are all related and all arise out of the same transaction or occurrence. Moreover, it is apparent that resolving those claims would involve common questions of law and fact.

But Plaintiff has not alleged that any of the ECF Defendants participated in, or are somehow liable for, the other Parole Board's and AMF Defendants' expression of intention regarding parole or retaliatory transfer. Indeed, there appears to be no transactional relationship between the claims Plaintiff raises against the Parole Board and AMF Defendants and the claims he raises against the ECF Defendants. Accordingly, the Court concludes that the claims Plaintiff alleges against the ECF Defendants—Warden Unknown Burgess, Assistant Deputy Wardens J. Erway and Unknown Clouse, Residential Unit Manager Unknown Montague, and Unit Chief Unknown Majerczyk—are misjoined.

Because the Court has concluded that Plaintiff has improperly joined the ECF Defendants, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *see also Michaels Bldg. Co. v. Ameritrust*

*Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under Section 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

> exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam); *Cooper v. Nielson*, No. 99-15074, 1999 WL 719514 (9th Cir. Sept. 15, 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges that the misjoined Defendants engaged in conduct during a period beginning in January 2023, and continuing through February 2023. Whether or not Plaintiff receives the benefit of tolling during any administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against the misjoined Defendants, and he will not suffer gratuitous harm if these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop the AMF Defendants from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Carney*, 2008 WL 485204, at *3. If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he shall do so by filing new civil actions on the form provided by this Court,

*see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[2]

### III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

---

[2] Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Immunity

Plaintiff has named the Michigan Parole Board as a defendant, not any one or more of the individual members of the board. The Michigan Parole Board is part of the MDOC. Mich. Comp. Laws § 791.231a(1). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, the Michigan Parole Board, as part of the Michigan Department of Corrections, is immune from injunctive and monetary relief. *See Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (holding that both the MDOC and the parole board are entitled to immunity under the Eleventh Amendment); *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 492 (6th Cir. 2004) (same); *Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (same). In addition, the Michigan Parole Board is

13

not a "person" who may be sued under Section 1983 for money damages.  *See Harrison*, 722 F.3d at 771. Therefore, Plaintiff has failed to state a claim against the Parole Board.

### B.    Due Process

Plaintiff suggests that the Defendants granted him parole without due process of law. (Compl., ECF No. 1, PageID.3 (stating "defendants had already made the decision to place him on parole out of [Plaintiff's] presence, which is a due process violation—no 30 day notice was given, Plaintiff did not agree to any type of parole condition"). To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude for two reasons.

First, Plaintiff has failed to allege that Defendants deprived him of a liberty interest when they ***granted*** him a parole. Plaintiff fails to indicate how parole constitutes a greater deprivation of liberty than remaining incarcerated at AMF or ECF. "While on parole, the prisoner 'shall be considered to be serving out the sentence imposed by the court,' MCL 791.238(6), but he 'remain[s] in the legal custody and under the control of the department,' MCL 791.238(1)." *People v. Idziak*, 773 N.W.2d 616, 625 (Mich. 2009) (footnotes omitted). Under either scenario, Plaintiff would complete his sentence when he reaches his "max out" date.

Second, no matter what the Parole Board decides—whether the Board grants parole or denies parole—Plaintiff has no liberty interest relating to parole. There is no constitutional or inherent right to be released conditionally before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not

14

give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Similarly, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Because Defendants did not deprive Plaintiff of an interest protected by due process, Plaintiff has failed to state a due process claim.

### C.    Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's retaliation allegations against the Parole Board and AMF Defendants are not particularly illuminating. Plaintiff states: "on 1-17-2023 Plaintiff learned that the [Michigan Parole Board and AMF Defendants] decided to use retaliatory actions against him by the way of

transfer[r]ing him to ECF-unconstitutional Start Now program." (Compl., ECF No. 1, PageID.3.) Construed liberally, it appears that Plaintiff is claiming that his expression of a desire to "max out" rather than leaving on parole is "protected conduct." Plaintiff claims that the AMF Defendants (and the Parole Board) engaged in adverse action when they transferred Plaintiff from AMF to ECF and/or placed Plaintiff in the Start program. Finally, it appears that Plaintiff claims that the remaining Defendants transferred Plaintiff or placed him in the Start program *because* of Plaintiff's protected conduct.

It is not entirely clear whether refusing parole—or at least expressing an intention to refuse parole—is protected conduct. Persons convicted of crimes have the right to decline probation. *See People v. Bensch*, 935 N.W.2d 382, 388 (Mich. Ct. App. 2019). But the reasoning of the *Bensch* majority appears to rely on the definition of probation as "a matter of grace." *Id.* at 384. Importantly, it is "grace imposed by a sentencing court." *People v. Kern*, 794 N.W.2d 362, 367 (Mich. Ct. App. 2010). Parole, on the other hand, "is a conditional release; a paroled prisoner is technically still in the custody of the Department of Corrections, which is executing the sentence imposed by the court." *Id.* In that sense, refusing parole may be no different than refusing to serve one's incarceration in a particular facility or at a particular security level. If so, the refusal is simply disobedience, which is not protected conduct. *See, e.g., Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that insolent speech is not protected conduct). Accordingly, the Court concludes that Plaintiff has failed to allege that he engaged in protected conduct by expressing an intention to refuse parole.

Moreover, even if expressing an intention to refuse parole is considered protected conduct, Plaintiff's claims fail at the second step. He has not alleged an adverse action by the Parole Board

16

or the AMF Defendants. Plaintiff offers two distinct examples of adverse action: his transfer to ECF and his placement in the Start program.

Certain transfers might be sufficiently adverse to deter a prisoner from exercising protected rights. But, generally, because "prisoners are expected to endure more than the average citizen, and…transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g.*, *Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." (internal quotation marks omitted)). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Hill*, 630 F.3d at 474 (holding that transfer to a higher security level can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney).

Here, Plaintiff alleges he transferred from Level V at AMF to Level IV at ECF. Apart from his placement in the Start program, however, Plaintiff does not suggest that the transfer to a reduced security level at ECF was adverse to him. Accordingly, the Court concludes Plaintiff's allegation of the transfer, standing alone, does not rise to the level of an adverse action.

Based on Plaintiff's description of the conditions of confinement in the Start program, his placement in that program also could be considered adverse action. But neither the Parole Board nor the AMF Defendants had the power to place Plaintiff in the Start program at ECF. According

to the MDOC Director's Office Memorandum (DOM) 23-7, only the Central Facilities Administration Deputy Director (or his or her designee), has the authority to place a prisoner in the Start program—not the Parole Board and not the institutional staff at AMF. MDOC DOM 23-7 (eff. Jan. 1, 2023). Plaintiff's conclusory allegation that the AMF Defendants and the Parole Board "decided" to transfer him to the Start program does not include any facts to explain how those Defendants could exercise the authority to make that decision.

Ultimately, Plaintiff's failure to link the Defendants to the actual decision to place him in the Start program is fatal to his retaliation claim. In order to state a First Amendment retaliation claim against the Parole Board and the AMF Defendants, Plaintiff must show that those Defendants had the ability and authority to take "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1032, 1037-38 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300–01 (6th Cir. 1999). Plaintiff has not alleged, and cannot make, that connection where the named Defendants have no authority to make the placement that Plaintiff alleges.

Furthermore, Plaintiff's allegations of a motivational link between his expression of an intention to refuse parole and his transfer and/or placement in the Start program are nothing more than stated conclusions without any factual support. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations

of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff's one-sentence retaliation claim alleges nothing more than the ultimate fact of retaliation in this action. He has not presented any facts whatsoever to support his conclusion that Defendants retaliated against him because he expressed an intention to refuse parole. Accordingly, he fails to state a First Amendment retaliation claim against the Parole Board or the AMF Defendants with respect to any element of such a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### D.    Other Constitutional Claims

Plaintiff makes passing reference to other possible constitutional violations: violation of the Eighth Amendment protection against cruel and unusual punishment; violation of the Fourteenth Amendment Equal Protection Clause; and violation of the Fourth Amendment. (Compl., ECF No. 1, PageID.2.) No matter how liberally the Court construes Plaintiff's factual allegations, the Court concludes that Plaintiff fails to state any such claim against the Parole Board or the AMF Defendants. To the extent Plaintiff's factual allegations implicate those constitutional guarantees at all, they are factual allegations relating to the ECF Defendants, not the Parole Board or the AMF Defendants.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff has misjoined his claims against the ECF Defendants. The Court will drop those parties from this suit and dismiss Plaintiff's claims against them without prejudice. With

regard to Plaintiff's claims against the remaining Defendants—the Parole Board and the AMF Defendants—Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   May 23, 2023                            /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                United States Magistrate Judge